**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>VANGUARD NATURAL RESOURCES, LLC, *et al.,*[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 17-30560<br><br>(Jointly Administered) |
| VANGUARD NATURAL RESOURCES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>University Lands,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Vanguard Natural Resources, LLC (the "Plaintiff" or "Vanguard"), the reorganized debtor (the "Reorganized Debtor") in the above-captioned chapter 11 case,[2] by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against University Lands (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: Vanguard Natural Resources, LLC (1161); Eagle Rock Acquisition Partnership, L.P. (6706); Eagle Rock Acquisition Partnership II, L.P. (0903); Eagle Rock Energy Acquisition Co., Inc. (4564); Eagle Rock Energy Acquisition Co. II, Inc. (3364); Eagle Rock Upstream Development Company, Inc. (0113); Eagle Rock Upstream Development Company II, Inc. (7453); Encore Clear Fork Pipeline LLC (2032); Escambia Asset Co. LLC (3869); Escambia Operating Co. LLC (2000); Vanguard Natural Gas, LLC (1004); Vanguard Operating, LLC (9331); VNR Finance Corp. (1494); and VNR Holdings, LLC (6371). The location of the Reorganized Debtors' service address is: 5847 San Felipe, Suite 3000, Houston, Texas 77057.

[2] On November 9, 2017, the Court entered an order closing the cases of certain affiliated debtors' cases, leaving only the current Reorganized Debtor's case open. *See* Case No. 17-30561, Docket No. 9.

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Reorganized Debtors pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been constructively fraudulent conveyances.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Reorganized Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the other Reorganized Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), captioned *In re Vanguard Natural Resources, LLC, et al.,* Case No. 17-30560, pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 550, 1106, 1107, and 1123(b) of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

5.       This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6.       Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1409.

7.       Pursuant to Bankruptcy Local Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.       On February 1, 2017, Vanguard commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. On February 2, 2017 (the "Petition Date"), the remaining Reorganized Debtors, including Vanguard Operating, LLC ("Vanguard Operating") and Vanguard Natural Gas, LLC ("Vanguard Natural Gas") each commenced a case by filing a voluntary petition under chapter 11 as well.

9.       On February 3, 2017, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes only.[3]

10.       On July 18, 2017, the Court entered an order confirming the *Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order" and "Plan," respectively). [Docket No. 1109 (Confirmation Order) and Docket No.1109-1 (Plan)].

11.       The Plan and Confirmation Order further provide that, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors

---

[3] Docket No. 54.  All docket items referenced are from Case No. 17-30560 unless specifically noted.

shall retain (or shall receive from the Debtors) and may enforce all rights to commence and pursue any and all Causes of Action,[4] whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. *See* Plan, Art. IV.O; Conf. Order, ⁋ 44.

12.     In accordance with section 1123(b)(3) of the Bankruptcy Code, under which section a plan may provide for the settlement, retention, and/or enforcement of a claim or interest held by a debtor or estate by a representative of the estate, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. *See* Plan, Art. IV.O; Conf. Order, ⁋ 45.

13.     The Plan further provides that the rights of any Entity named or referred to in the Plan shall inure to the benefit of any representative of each Entity.  Plan, Art. XII.E.

14.     The effective date of the Plan occurred on August 1, 2017 (the "Effective Date") [Docket No. 1219].

15.     On November 9, 2017, the Court entered the *Final Decree Closing Certain Chapter 11 Cases Pursuant to Bankruptcy Code Section 350(a) and Bankruptcy Rule* (the "Final Decree"). [Bankr. Case No. 17-30561, Docket No. 9].  Pursuant to the Final Decree, all cases but the Vanguard case were closed, without prejudice for the Reorganized Debtors to seek to reopen such cases for good cause shown. The Final Decree provided that all adversary proceedings to be filed in the future shall be administered in the Vanguard case, notwithstanding the fact that such adversary proceedings may be asserted on behalf of another Reorganized Debtor. Final Decree, ⁋ 2. The Final Decree further provided that nothing in the Final Decree shall affect the substantive rights of any party in interest, including the Reorganized Debtors. *Ibid.*

---

[4] All terms not defined herein shall have those meanings ascribed to them in the Plan and/or Confirmation Order.

16.     Pursuant to the schedules filed in this matter, and as described in Section IV.D of the *Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Vanguard Natural Resources, et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement"),[5] the Reorganized Debtors' liabilities exceed their assets and therefore general unsecured claims are not expected to be paid in full.

**THE PARTIES**

17.     As more fully discussed in the Disclosure Statement, as of the Petition Date, the Reorganized Debtors comprised an oil and gas company with a principal focus on acquisition, production, and development activities in the Rocky Mountain, Mid-Continent, Gulf Coast, and West Texas regions of the United States. As part of these activities, the Reorganized Debtors owned working interests in productive wells, as well as interests in undeveloped leasehold interests surrounding their productive wells. The Reorganized Debtors also provided "midstream" services, which involved the gathering, transporting, and processing of produced hydrocarbons. The Reorganized Debtors owed a variety of oil, gas, and sulfur processing plants and facilities across their operating regions.

18.     Pursuant to Bankruptcy Code sections 547, 548, 550, 704(a), 1106, 1107, and 1123(b)(3), as well as pursuant to the Confirmation Order, Plan, and Final Decree, Plaintiff is authorized and has standing as the estate representative for the Reorganized Debtors, including Reorganized Debtors Vanguard Operating and Vanguard Natural Gas, to investigate, pursue, commence, prosecute, compromise, settle, or otherwise resolve certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action.

---

[5] Docket No. 856.

19.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that managed the surface and mineral interest of 2.1 million acres of land in West Texas to or for the Reorganized Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 704 W. Dengar Avenue, Midland, Texas 79705-5319.  Plaintiff is informed, believes, and on that basis alleges that Defendant is a business entity, form unknown, residing in and subject to the laws of Texas.

### FACTUAL BACKGROUND

20.     Prior to the Petition Date, the Debtors, as an oil and gas company, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

21.     As an oil and gas company, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

22.     The Debtors' financial difficulties that led to the decision to file the Bankruptcy Cases are attributable to a combination of factors. A summary of the Debtors' prepetition operations and factors that led to the Bankruptcy Case are set forth in the Disclosure Statement. [Docket No. 856, Art. II]. Despite the Debtors' low-cost operating structure, the Debtors' revenue, earning, and liquidity were negatively affected by depressed commodity prices that were persistently low and hit exploration and production companies particularly hard. In 2016, the Debtors' liquidity became strained after various borrowing-base redeterminations eliminated their ability to drawn on their Credit Agreement, and triggered mandatory repayments of principal. To address this liquidity issue, the Debtors attempted various cost-cutting measures; however, as market conditions hit rock bottom in early 2016, it became clear the Debtors would not be able

to maintain compliance with certain financial covenants under the Credit Agreement. Accordingly, in the months preceding the Petition Date, the Debtors worked with their lenders to negotiate a consensual restructuring transaction.

23.     As of the Petition Date, the Debtors utilized and maintained a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[6] As of the Petition Date, the Cash Management System consisted of several corporate bank accounts, including: operating accounts, vendor accounts, investment accounts, and zero balance accounts, which were maintained at several banks, including Capital One, N.A. ("Capital One")

24.     Among these bank accounts, Vanguard Operating maintained an operating account (the "Main Operating Account") at Capital One with an account ending xxx4917.  From this Main Operating Account, Vanguard Operating collected revenue generated by, and made payments associated with, its operating activities. [*See* Docket No. 5]. Vanguard Natural Gas maintained an operating account (the "Secondary Operating Account" and, together with the Main Operating Account, the "Disbursement Accounts") at Capital One with an account ending xxx1814, from which Vanguard Natural Gas paid its expenses.

25.     Vanguard Operating and Vanguard Natural Gas each used their respective Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant.

26.     During the ninety (90) days before the Petition Date, that is between November 4, 2016 and February 2, 2017 (the "Preference Period"), the Debtors continued to operate their

---

[6] *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Bank Accounts, Business Forms, and Cash Management System, (II) Waiving Requirements of Section 345 of the Bankruptcy Code, and (III) Authorizing Continuation of Intercompany Transfers*, Docket No. 5.

business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

27.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). Upon further information and belief, the Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

28.     Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

29.     As identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant.

30.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

31.     One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $146,995.24 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

8

32.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

33.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

34.     During the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $146,995.24. See Exhibit A.

35.     Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

36.     Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements. See Exhibit A.

37.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.  See Exhibit A.

38.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.  See Exhibit A.

39.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

40.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

41.     As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

42.     In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

43.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

44.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, or was incurred by another Debtor but paid for by the Debtor transferor(s) identified on Exhibit A, Plaintiff pleads in the alternative that the Debtor transferor did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A.     The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.     The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.     The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

45.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

46.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

47.     Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

48.     Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

49.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

50.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

51.     Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

52.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

53.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Reorganized Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

54.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Reorganized Debtors' chapter 11 estates or Plaintiff previously allowed by the Reorganized Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

A.      On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.      On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 29, 2019

**ASK LLP**

By:  /s/ *Gary D. Underdahl*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary D. Underdahl, Esq., MN SBN 0301693
Anastasia Kazmina, Esq., MN SBN 0398419
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3854
Fax: (651) 406-9676
Email: akazmina@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff, Vanguard Natural
Resources, LLC*